May it please the Court, Mark Yim for Appellant Gray-Maria. With the Court's permission, I'd like to reserve two minutes for rebuttal and begin with the ineffective assistance of counsel claim. This is a troubling case. Gray-Maria had a documented history of schizophrenia, including hearing voices commanding him to harm himself. On one occasion, he attempted to kill himself by jumping off a hotel window, I'm sorry, off a hotel building because the Mr. Maria committed the crimes at issue here. It was because he was hearing voices commanding him to harm others. It's undisputed in this case that Mr. Maria heard voices that he interpreted as angels, commanding him to kill his disabled and paralyzed cousin because it would send her to a better place. The state's own expert in this case acknowledged that Mr. Maria felt compelled by these voices and that he heard voices. Counsel, let me just get right to the part of the case that I find the most difficult to analyze and that has to do with California law on what it means to engage in deliberation for the purpose of first degree murder. And as I understand the cases, and this is where I would like actually both of you to respond to this question, it appears to me that the cases suggest that a person who is suffering from hallucinations and delusions is still capable of deliberation if they think about it in the context of their crazy delusions. That is a person who is entirely unable to deliberate, maybe gets no specific intent and gets down to second degree murder, but a person who says, okay, well the angels are telling me to do this, but I wonder if that's really the right thing to do. And that seems to be what happened factually here because it sounds like he debated with himself quite a bit as to whether he should follow or not follow. What's your read on California law? Well, Your Honor, certainly the evidence that Mr. Maria was hearing voices and that he was, as you were saying, having an internal debate with himself as to whether to follow those voices. Right, and that's why he sort of looked at her and sort of thought that her silence meant that she wanted him to do it and so he thought hard about it, but he thought hard about it in the context of a crazy hallucination and a crazy world. But so what does California law tell us? Is that still deliberation within the meaning of California law? Well, I think if, as here, if the evidence points towards the inability to form this intent, that if the delusions that Mr. Maria was having were experiencing, that if they actually blocked his ability to appreciate this and to form that intent, I'm sorry, appreciate may be the wrong word because that goes towards the sanity question, but in terms of his ability to feel compelled by these voices, that that was what would have resulted in him not being able to deliberate and not be prepared to meditate. But you're not answering my question, which is specifically does California law require to get one notch below first degree murder that you not be able to deliberate at all or that you not be able to deliberate rationally because those are two very different things. Clearly he didn't deliberate rationally to the extent that this kind of deliberation is ever what one could call rational. But he thought hard about it and debated so he deliberated inside a bubble. So what case allows us to say that that would not have been intent? And I guess the reason I'm asking the question is the history of mental illness that wasn't presented would seem to have very little bearing on the question if California law is what I think it is. Well, Your Honor, to answer your question, I'm not aware of a case that quite defines the question as you're stating it. I think the issue in this case is that counsel failed to present an expert that would have explained to the jury how it was that the delusions in this case negated the premeditation and the deliberation. But don't we have the experts in the sanity phase largely in agreement as to what the process was that Mr. Maria went through? They just come to different conclusions as to whether or not that means he's legally sane or not. And that included this irrational deliberation. Yes, Your Honor. And as to the question of sanity, the experts did disagree. What is not known in this case is what would have happened had at least the defense expert testified during the guilt phase. And that's where don't we have to give deference to the California courts that found that that wasn't ineffective and may be... Wasn't prejudicial. Wasn't prejudicial, correct. Right. And that is a key point here, Your Honor, is that the state court made this ruling on the IAC claim strictly on prejudice grounds. So this court actually can review the deficient performance prong of that question. That's why I'm pushing you because the additional evidence would be irrelevant if I'm right about what deliberation means in the California cases. But I don't think it would be irrelevant, Your Honor, because the California Supreme Court has said that evidence of sanity or evidence of insanity may overlap significantly. Sure. And it's clear that his whole thing is the product of these hallucinations and mental illness. There's no question about that. Here, both the experts, I think you agree that both the experts, defense and prosecution, agreed that Mr. Moran knew that what he was what he was doing when he killed Mara and that is he knew the nature and quality of his actions. Yes, Your Honor. Right. Yes. Okay. So then looking at premeditation and looking at California law, it seems like in a murder case these evidence of delusions and hallucinations might negate premeditation only where the evidence precludes any deliberation. I think that's what Judge Graber is asking. That could allow reducing first degree to second degree or involuntary manslaughter. So if that's the case, how is there prejudice here by not putting on the experts at that stage at the guilt stage? Well, Your Honor, there is there is or there are examples in the California case law of talking about this overlap in the evidence. So one case is People v. James. It's a 2015 case out of the California Court of Appeal in which the same defense expert testified both in the guilt phase and the sanity phase. On appeal, the state had argued that the guilt phase, the experts shouldn't have been allowed to argue in the guilt phase because the evidence was the same as the sanity and evidence of insanity cannot be presented in the guilt phase. But the court found that even though this evidence was largely similar, that it was still relevant because it was presented for the issue of whether whether it negated the intent during the guilt phase. And that's what we have here is that even that the evidence that Dr. Jaffe, the defense expert considered here, while it may have been largely similar to what he had considered for the sanity phase, that that evidence would have been relevant to this key question of whether he was able to deliberate and premeditate. In what way? In what way? In that he would have been able to explain how how Mr. Maria felt compelled by these voices and that he was and that because of this compulsion, he was not able to essentially conform his actions to the law. In this case, that would have been that would have done much to explain to the jury how they could how they could reach a not guilty verdict. But the facts in the record show that he did deliberate or that he did actions that constituted premeditation. He got up from after talking to his his cousin, went over to the sink and came back and asked the cousin questions about, you know, Mara and then said that it looked like Mara wanted him to kill her. And if it seems like California law says that if he is able to deliberate at all and show signs of premeditation, even within his delusion, I mean, I know that seems remarkable, but that's what California law seems to say that that's that's that's sufficient. And so I'm trying to figure out because it's an area that concerned me initially before I delved into California law as to whether or not the lawyer should have presented more evidence in that guilt phase. And that's, I think, what you're arguing. I think it's, you know, it's it's a good place to have an argument. But I'm trying to figure out now after looking at some California law, how that would have made a difference because we're looking at prejudice at this point, I think. Well, Your Honor, I wonder if a if a recent case I'm out of this court, Whedon v. Johnson, would be instructive because that's another case in which a lack of intent defense was presented. And this court found that testimony from a qualified expert would have added an entirely new dimension to the jury's critical issue of Whedon's mens rea. That was also a case that that involved a murder. And seeing that the expert's expert's testimony would have informed the jury's consideration of the specific intent there, I think, underscores the fact that in this case, the jury was considering this question of whether Mr. Maria had the intent, but they did it with virtually no evidence. The defense didn't put on any witnesses or any evidence on its own and then only argued weakly in closing argument that Mr. Maria lacked intent. But that was after the jury was instructed that evidence is or the arguments of counsel are not to be considered evidence. And then what do we do with the whole strategy sort of argument that maybe it was strategic for a defense counsel not to present any of this evidence during the guilt phase because if they present it and the jury rejects it, then their chances at the insanity, as I follow it, chances for insanity are going to really go down. And so strategically, he wanted to hold his firepower until the sanity phase. Well, we know or we can infer it's not strategic because the standards are so different. Had by waiting until the sanity phase, the standard shifted from the state to the defense. And at guilt phase, the state had to... You mean the burden of proof. I'm sorry. Yes, the burden of proof. The state had to prove in the guilt phase beyond a reasonable doubt that Mr. Maria had the intent for first degree murder. But by waiting until the sanity phase, the defendant had to actually prove by a preponderance of the evidence. Now, the fact that he forewent the possibility of taking advantage of the highest standard of proof that we have to be on the reasonable doubt standard and having the ability to raise any evidence that would have raised any reasonable doubt, that that's unreasonable. And we also know that this isn't a case where he considered a strategy and discarded it for strategic reasons because he did use the strategy. He used the lack of intent defense. He just didn't present any evidence in support of it. And we can also tell from Dr. Jaffe's testimony that he was not asked to consider the guilt phase. When Dr. Jaffe testified during the sanity phase, he testified about what he was asking Mr. Maria in his examination, and he said that he was asking him about whether he knew the difference between right and wrong and whether he understood the moral wrongfulness of his actions. That's what you're going to get down to in about a minute if you wanted to save any time. I will do so, Your Honor. Thank you. Good morning, Your Honor. Supervising Deputy Attorney General Bill Bilderback on behalf of the State. To get right to the question that the Court directed to my opponent, it seems like we're talking about the intersection between sort of the legal concepts of deliberation and malice for thought and mental health. Yes, specifically I'm thinking about people versus bobo, I think, and people versus stress where those issues are discussed. Right. And it seems pretty clear my best understanding of California law, I think, comports with the decision that the Court's come to, which is that under California law- Question, not a decision at this point. Go ahead. Reasonable. That one can deliberate even when one is suffering under a delusion and hallucination. And I want to be clear that it's 100% correct. There is no dispute that the defendant in this case was a paranoid schizophrenic who was responding to command hallucinations at the time of the offense. So that's really-there's no real factual dispute here. I think that on the question of premeditation and deliberation specifically, both the defense mental health expert and the prosecution mental health expert came to the same conclusion on that question, which is that this was an intentional act that he carefully considered before undertaking. That's the definition of premeditation. It's crazy as a loon to use a layperson's way of thinking about it, and it is troubling. And it absolutely is troubling. And the question that remains was whether or not he was insane at the time of the crimes. Whether his motivation for committing this crime was based upon a hallucination that he was receiving commands from angels or it was an actual command that he received from a human being, he still went through the mental processes that the law contemplates before he undertook the action. And, again, there's no question that he appreciated what he was doing, that he considered what he was doing, and that he nevertheless undertook the action. And then we get to the heart of the issue that was before the state court and I think the heart of the issue in this court, which is whether there was substantial evidence that he was insane. There's an interesting- Yeah, go ahead. I'm sorry, yes. For me, I really would like to know more in the area of whether or not his counsel was ineffective for not presenting mental health evidence in the form of the expert during the guilt phase to negate the intent in light of how severely mentally ill this man was. And so that, to me, I want to get to the core of that, what your best response is to that, especially in light of the fact that his defense counsel mentioned in closing statement mental illness. I think that undercuts your argument regarding the strategy. He mentions it, but he never put on any evidence. So let me give you an opportunity to respond. Thank you. And the reason that he didn't put on any evidence was because all of the evidence that he had, which is to say the report from his mental health professional, proved beyond a shadow of a doubt that his client premeditated, deliberated, and acted with malice aforethought. He could not put that evidence in front of the jury if he had any prayer at all. Of course, we've all encountered situations where the best available defense on guilt is a pretty poor defense. This was that case. There really was no defense. The defendant committed the crime. The identification was not an issue. And after we have both the confession and we have the reports of the mental health professionals where it was the conclusion of the defense mental health professional that he premeditated and deliberated the crime. Acknowledging he didn't use those words, but that's the only rational legal construction of the conclusion of the defense mental health expert. He couldn't have put that evidence on unless he was just going to plead guilty or tantamount to pleading guilty at the guilt phase and then proceed directly to the sanity phase. He elected to at least contest the question of guilt. And that was a reasonable decision, certainly not one that we would normally fault counsel for doing. And he did attempt to persuade the jury, albeit with minimal evidence. But again, there really was no evidence. No evidence. No, there was no evidence. Well, there was evidence. In fact, there was a ton of evidence. It wasn't in front of the jury. It was in defense counsel's pocket. He knew what it was. But he mentions it to the jury. Well, he mentioned the notion of mental health, and I think that that was reasonable under these circumstances because, to borrow the court's phrase, that he was crazy was pretty evident, I think, from even the limited picture of the defendant that was presented to the jury during the guilt phase. So since we have that atmosphere, at least he was attempting to exploit it to the best that he could. But again, if he had actually developed the evidence on the mental health issue, it would have been utterly devastating. So you're saying he was crazy but not insane. I think that that was their bet. Well, again, at the guilt phase we don't talk about sanity at all. It's not a thing you can bring up. But ultimately, that's what you say. He was crazy but not insane. Well, certainly, yes. That was the determination of Dr. Mahoopt, and that was the determination of the jury who was confronted with it. Is that something that's cognizable on habeas? In other words, are we free to review the jury's finding of sanity? My understanding is no. There is no published Ninth Circuit authority on that question, but there is unpublished Ninth Circuit authority that says, no, you cannot reach that issue. And I found, and if the court will refer to my briefs, I think I've done a half a dozen or so district court cases. And I found no contrary authority that suggests that it is cognizable. And, of course, the defendants' equal protection argument has to fail because he's only ever comparing California defendants to not California defendants. And California can define its crimes in any way it sees fit, no more than he could argue, well, a California defendant didn't commit burglary because it didn't fulfill Arizona's definition of burglary. Of course, that's not the law. So there is no equal protection concern here. If I can ask, in this insanity phase, the prosecution expert admitted that he couldn't render his opinion with a high, I think it was with a high degree of certainty. I think that was the way the question was phrased. Yes, I think that's right. A reasonable degree of certainty, but not a high degree of certainty. A reasonable degree of medical certainty. Right, okay. And I'm going to put a lot of weight on medical, that's why. But he acknowledged that Maria suffered from serious mental health issues. Is that not enough that a reasonable jury could conclude that Maria was, you know, sane or not sane at the time of the crime? I mean, to question that testimony by the doctor, if it wasn't to a high degree of medical certainty? Well, if the jury had come to the other determination, I don't even think I'd get to appeal that, nor would I appeal that. That would have been a rational determination based upon the state of the evidence. We had the opinion of Dr. Jaffe that the defendant was insane. And then, like you said, there was the split of opinion with Dr. Mahoup. But the jury did resolve that factual question, and they resolved it in the manner they did, and they resolved it based upon, I think, not just the opinion of Dr. Mahoup, but I think his superior accounting for the circumstances preceding the crime and at the time of the crime, the defendant's behavior, which was more suggestive of an understanding that what he was doing was wrong than I think Dr. Jaffe's opinion, which I think discounted some of those important facts. My question is, going back to the guilt phase, should we even be discussing whether this was a strategy or not a strategy when that was not the basis of the California court's decision? The California court looked exclusively as to whether there was prejudice for failing to present any evidence of his mental health, his ability to deliberate. Certainly, that's true of the L.A. County Superior Court's decision in the case, the written opinion of the L.A. County Superior Court. And when I briefed the case, that was my best understanding of Ninth Circuit law, that we don't look through the subsequent postcard denials from the Court of Appeal and the Supreme Court. And so that means that we do look through. I'm sorry, I misspoke. That we do look through to the L.A. Superior Court. And so don't we then have de novo review of the first prong of Strickland? We would. I would point out that my assumption that you look through those is perhaps won't be true very shortly. There's a case in the U.S. Supreme Court right now called Wilson v. Sellers. And in Wilson, they're trying to decide. It's not in my briefs because it hasn't been decided yet. But they're trying to decide whether you do look through silent denials to lower merits determination. But I don't think that makes a great deal of difference in this case. And the short answer, I think, to the judge's question is you don't need to because this case fails on prejudice regardless. And so while you could undertake an analysis of the performance prong, at the end of the day, just like Strickland and his progeny instruct us, because the claim is going to fail on the prejudice prong, irrespective of any criticism we're going to have of counsel's performance, there's really no point in doing that analysis. But if we are going to do that analysis, I think that it is trial counsel's decision-making does bear scrutiny in this case. Even if we're going to eliminate the second layer of deference under 2254D, we still have the first layer of deference under Strickland, which is that we presume that trial counsel's decision-making was the product of a reasonable decision. And especially as we are in this case, we're dealing with the situation where we all know that trial counsel undertook the investigation. And I would point out that every case that my opponent cited, including the case in his 28-day later, Whedon, all of those cases are cases where there was no mental health investigation undertaken. That's a very different situation. Once you have the investigation, we're into that area where Strickland, Berger v. Kemp, the cases tell us that, no, it's virtually unassailable. Part of counsel's argument is that the investigation was half-hearted by not asking the premeditation piece as distinct from the insanity right and wrong piece. So why isn't that somewhat analogous to no investigation, when the allegation, at least, is that the investigation was insufficient? Well, I would say in this case, because we did have a number of examinations of the defendant's mental state, not only the examination by the defense expert, by the prosecution expert, but we also have the 1368 reports. We also have the prior mental health reports from the prior periods of hospitalization and care. So it is not a situation where defense counsel, it would be reasonable to say that defense counsel was ignorant of the defendant's mental state. It was thoroughly, fully developed, and they were keenly aware of it. And so the determination about whether or not to pursue a particular strategy, I don't think hinges on whether he phrased the question to one of the half a dozen or so mental health experts who examined the defendant to see whether it fulfills some legal definition of, say, premeditation. The lawyer is perfectly capable of determining that, based upon his thorough review of this mountain of mental health evidence that we have as to this defendant. So especially, again, when we indulge the presumption, as we must, that trial counsel's decision-making is reasonable, that, no, it would not be fair to fault counsel for not investigating his mental state in this particular case. And because we did have that full-throated investigation, it becomes, counsel's decision-making becomes, as the cases say, virtually unassailable. Toward the end of the petitioner's argument, he said, when we looked at the record, we should infer that this wasn't a strategy. I heard you say just the opposite. Am I correct? Well, again, the cases instruct us that when we're examining trial counsel's, yes is the short answer to your question, the cases instruct us that when we are examining trial counsel's performance, or any attorney's performance, that we indulge the presumption that those decisions are the product of reasonable strategic decision-making. So we shouldn't draw, to the extent that there are inferences to be drawn, we shouldn't draw, and especially as my opponent's suggesting, draw a negative inference that would suggest that the presumption can be overcome. That seems to defy logic. So if we were to undertake the first prong of the Strickland analysis, the absence of an affidavit from counsel saying it was my strategy shouldn't be necessary, we shouldn't be concerned, then we should assume it was a strategy? Again, that's exactly what the cases instruct us, is that we have to assume in the absence of countervailing evidence, I guess it's a presumption, so unless the presumption is overcome, I think probably is a better way to say it, that there's a presumption that trial counsel acted as a reasonably diligent advocate under prevailing professional norms, and in the absence of evidence overcoming that presumption, then the presumption is maintained and that's the end of the inquiry for the first prong of Strickland. But again, I think that this case so thoroughly fails on the second prong of Strickland that as interesting as the exercise of doing that analysis on the first prong might be, I don't think it's necessary for the resolution of this case. Thank you very much. Thank you, counsel. Mr. Meehan, you have some rebuttal time remaining. Your Honors, I apologize for not addressing your question to your satisfaction, but if I can offer to submit further briefing on the deliberation issue, I'd be happy to do so. And then on the issue of prejudice, I think it's important to note, counsel was saying that the prejudice issue here was overwhelming, but actually from the length of deliberations, I think the opposite is true. At the guilt phase, the jury deliberated for over a day, and considering the fact that there was a detailed confession and the defense had presented no evidence in the guilt phase, that shows, oh, and they were considering the only issue in terms of the defense being lack of intent, that shows the jury was troubled by it and had a difficult time getting to that issue. Even in our sanity to terminate. Did the state court remark at all about the length of the deliberation? No, the state court did not. But I think just given the fact that this was so one-sided in what counsel had presented in the guilt phase and the fact that, again, that the defendant had given this detailed confession about what he had done, that that is an indication that this was a difficult case and that expert testimony from Dr. Jaffe could reasonably expect it to have turned the tide here. We can also look at the sanity deliberations and see that there was prejudice here, too, because in the sanity phase, that is where Dr. Jaffe was testifying. And even though he was testifying to a different issue, the jury there didn't reach a verdict until the third day. And in their deliberations, they sent a note to the judge asking for a definition of the preponderance of the evidence. Thank you, counsel. You've exceeded your allotted time. Thank you, Your Honor. I appreciate the arguments that both of you have presented in this very challenging case, and the case is subpoenaed.
judges: Graber, Murguia, Bolton